**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LONG HORIZON TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>SCHNEIDER ELECTRIC SE and SCHNEIDER ELECTRIC USA, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:26-cv-00<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Long Horizon Technologies LLC ("Long Horizon" or "Plaintiff") for its Complaint against Defendants Schneider Electric SE ("Schneider SE") and Schneider Electric USA, Inc. ("Schneider Inc.") (collectively, "Schneider" or "Defendants"), for patent infringement alleges as follows:

**THE PARTIES**

1. Long Horizon is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Marshall, TX 75670.

2. On information and belief, Defendant Schneider SE is a limited liability company organized and existing under the laws of France, having a principal place of business at 35 Rue Joseph Monier, 92500 Rueil Malmaison, France.

3. On information and belief, Defendant Schneider Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at One Boston Place,

Suite 2700, Boston, Massachusetts, 02108. On information and belief, Schneider Inc. is a wholly owned subsidiary of Schneider SE.

## JURISDICTION

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Venue is proper in this District as to Schneider SE pursuant to 28 U.S.C. § 1391. Schneider SE is not a resident of the United States and thus "may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). In addition, or in the alternative, this Court has personal jurisdiction over Schneider SE pursuant to Fed. R. Civ. P. 4(k)(2).

6. Venue is proper in this District as to Schneider Inc. pursuant to 28 U.S.C. §§ 1391 and 1400(b). Schneider Inc. has admitted that it has a regular place of business within this District and that venue in this District is proper. *See Advanced Meter Systems, LLC v. Schneider Electric USA, Inc.*, Case No. 4:24-cv-489-SDJ, Dkt. No. 7, at 2-3 (E.D. Tex, Nov. 1, 2024) ("Schneider Electric admits that it has a regular place of business within the Judicial District" of the Eastern District of Texas, and that venue is proper); *see also Data PowerWorks, LLC v. Schneider Electric SE*, Case No. 2:25-cv-00300-JRG, Dkt. 14 at ¶ 7 (E.D. Tex. June 9, 2025) (admitting that venue was proper in the Eastern District of Texas as to Schneider Inc.). On information and belief, Schneider Inc. has committed acts of infringement, directly and/or indirectly, in this District with respect to Asserted Patents (defined below). Schneider Inc. has additional regular and established places of business in this District, including sales offices located at 911 W. Loop 281, Suite 317, Longview, Texas 75604 and 1650 West Crosby Rd., Carrollton, Texas 75006, and a warehouse and a logistics center located at 1651 Enterprise St., Athens, Texas 75751.



1



2

7. This Court has personal jurisdiction over Schneider SE consistent with the principles of due process and the Texas Long Arm Statute. Schneider SE infringes directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, including its wholly owned subsidiary Defendant Schneider Inc., which maintains sales offices in this District in the cities of Longview and Carrollton at 911 W. Loop 281, Suite 317, Longview,

[1] Image of Schneider Inc.'s sales office located at 1650 West Crosby Rd., Carrollton, Texas 75006, accessed on Google Maps on October 15, 2026.
[2] Image of Schneider Inc.'s warehouse and logistics center located at 1651 Enterprise St., Athens, Texas 75751, accessed on Google Maps on October 15, 2026.

TX 75604 and 1650 West Crosby Rd., Carrollton, Texas 75006 and a warehouse and logistics center at 1651 Enterprise St., Athens, TX 75751. On information and belief, Schneider SE shares resources with Schneider Inc. and obtains and reports consolidated revenue from sales in the United States, as disclosed in its Financial Information from 2024 and Annual Report from 2023.[3] Schneider SE hires employees to work in location in Texas via its website.[4] In addition, Schneider SE and Schneider Inc. have overlapping officers. For example, Kelly Backer is the Executive Vice President of North America Operations, who sits on the Executive Committee of Schneider SE[5] and the North America Executive Team of Schneider Inc.[6] Through direction and control, or in consort with subsidiaries, affiliates or intermediaries, including but not limited to Schneider Inc., some or all of which are Schneider SE 's agents or alter egos, Schneider SE makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and services within the State of Texas and this District that infringe one or more claims of the Asserted Patents, as alleged more particularly below.

8. For example, Schneider SE sells and offers to sell infringing products and services through its website, https://www.se.com/us/en/, which may be accessed throughout the United States, the State of Texas, and this District. In addition, Schneider SE, by way of its wholly owned

---

[3] https://www.se.com/ww/en/assets/564/document/505646/release-fy-results-2024.pdf?p_enDocType=Financialrelease&p_File_Name=2024FYResults at 3-5 (disclosing North American and US revenues for Schneider SE); https://www.se.com/ww/en/assets/564/document/462018/ 2023-universal-registration-document.pdf?p_enDocType=Financial%20release&p_File_Name=Universal%20Registration%20Document%202023 at 506-507 (showing Schneider SE holds a 100% interest in 33 subsidiaries in the United States, including Schneider Inc).

[4] https://careers.se.com/jobs?country=United%20States&page=2&state=Texas (listing 214 open positions in Texas as of October 15, 2026).

[5] https://www.se.com/ww/en/about-us/company-profile/corporate-governance/executive-committee.jsp.

[6] https://www.se.com/us/en/about-us/local/leadership-team/.

subsidiary Schneider Inc., has at least 13 sales offices located throughout the State of Texas. In addition, Schneider SE, itself or by way of its wholly owned subsidiary Schneider Inc., maintains a significant manufacturing presence in El Paso, Texas.[7] Schneider SE conducts business either directly or through its subsidiary Schneider Inc. at a data center integration facility located in Red Oak, Texas.[8] Schneider SE has authorized sellers and sales representatives that offer and sell products accused of infringement in this Complaint throughout the State of Texas, including in this District, and to consumers throughout this Judicial District, such as: CED/Interstate Electric located at 1001 West Cotton, P.O. Box 911, Longview Texas 75604; Industrial Electronic Supply, Inc. located at 602 Roenia Cr., Longview, Texas 75604-5422; Wholesale Electric Supply Co. Inc. located at 1122 W. Cotton St., Longview Texas, 75604, 201 Pope Street, Marshall, Texas 75670, and 3401 W. Shaw St., Tyler, Texas 75701; Dealers Electric Supply located at 506 West Houston St., Marshall, Texas 75670-3933 and 316 S. Palace, Tyler, Texas 75702. Further, Schneider SE partners with third-party re-sellers located in this District related to its data center products such as: Cynergy Technology located at 3903 Timms, Tyler, Texas 75701 and Productive Solutions located at 3214 McDonald Rd, Tyler Texas 75701-6118.

9. This Court has personal jurisdiction over Schneider Inc. consistent with the principles of due process and/or the Texas Long Arm Statute. Schneider Inc. infringes directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers and maintains sales offices in this District located at 911 W. Loop 281, Suite 317, Longview, TX 75604 and 1650 West Crosby Rd., Carrollton, Texas 75006. In addition, Schneider Inc. has previously

---

[7] https://www.se.com/us/en/about-us/newsroom/news/press-releases/schneider-electric-unveils-latest-texas-manufacturing-plant-as-part-of-a-300-million-investment-in-u-s-manufacturing-650368ccd03d75ce2a01cca0/.
[8] https://www.se.com/us/en/about-us/newsroom/news/press-releases/schneider-electric-opens-data-center-integration-facility-in-red-oak-tx-66739ba970de4cb867027917.

admitted that the Eastern District of Texas has specific and general personal jurisdiction over Schneider Inc. *See Advanced Meter Systems, LLC v. Schneider Electric USA, Inc.*, Case No. 4:24-cv-489-SDJ, Dkt. No . 7 at 2-3 (E.D. Tex. Nov. 1, 2024) (admitting that the Eastern District of Texas has specific and general personal jurisdiction over Schneider Inc.); *see also Data PowerWorks, LLC v. Schneider Electric SE*, Case No. 2:25-cv-00300-JRG, Dkt. 14 at ¶ 7 (E.D. Tex. June 9, 2025) (admitting that the Eastern District of Texas has personal jurisdiction over Schneider Inc.). Schneider Inc. sells and offers to sell infringing products and services throughout the State of Texas, including in this District, and introduces infringing products and services into the stream of commerce knowing that they will be sold in the State of Texas and this District.

10. For example, Schneider Inc. sells and offers to sell infringing products and services through its website, https://www.se.com/us/en/, which may be accessed throughout the United States, the State of Texas, and this District. Schneider Inc. has an extensive sales and manufacturing network throughout the State of Texas.[9] Schneider Inc. has at least 13 sales offices located throughout the State of Texas. In addition, Schneider Inc. maintains a significant manufacturing presence in El Paso, Texas.[10] Schneider Inc. also conducts its business at a data center integration facility located in Red Oak, Texas.[11] Schneider Inc. has authorized sellers and sales representatives that offer and sell products accused of infringement in this Complaint throughout the State of Texas, including in this District, and to consumers throughout this Judicial District, such as: CED/Interstate Electric located at 1001 West Cotton, P.O. Box 911, Longview

---

[9] https://www.dallasnews.com/sponsored/2023/12/27/schneider-electric-surges-across-texas-creating-jobs-in-dallas-red-oak-and-el-paso/.

[10] https://www.se.com/us/en/about-us/newsroom/news/press-releases/schneider-electric-unveils-latest-texas-manufacturing-plant-as-part-of-a-300-million-investment-in-u-s-manufacturing-650368ccd03d75ce2a01cca0.

[11] https://www.se.com/us/en/about-us/newsroom/news/press-releases/schneider-electric-opens-data-center-integration-facility-in-red-oak-tx-66739ba970de4cb867027917.

Texas 75604; Industrial Electronic Supply, Inc. located at 602 Roenia Cr., Longview, Texas 75604-5422; Wholesale Electric Supply Co. Inc. located at 1122 W. Cotton St., Longview Texas, 75604, 201 Pope Street, Marshall, Texas 75670, and 3401 W. Shaw St., Tyler, Texas 75701; Dealers Electric Supply located at 506 West Houston St., Marshall, Texas 75670-3933 and 316 S. Palace, Tyler, Texas 75702. Further, Schneider Inc. partners with third-party re-sellers located in this District related to its data center products such as: Cynergy Technology located at 3903 Timms, Tyler, Texas 75701 and Productive Solutions located at 3214 McDonald Rd, Tyler Texas 75701-6118.

## PATENTS-IN-SUIT

11. On August 4, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,733,021 (the "'021 Patent") entitled "System of Cloud Computing and Method for Detaching Load in Cloud Computing System." A true and correct copy of the '021 Patent is attached hereto as Exhibit A.

12. On May 5, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,738,894 (the "'894 Patent") entitled "Methods for Firmware Signature" A true and correct copy of the '894 Patent is attached hereto as Exhibit B.

13. Long Horizon is the sole and exclusive owner of all right, title, and interest in the '021 Patent and the '894 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Long Horizon also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit and to seek injunctive relief as appropriate under the law.

14. Long Horizon has at all times complied with the marking provisions of 35 U.S.C.

§ 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

15. The ’021 Patent generally relates to systems and methods for distributing cloud-computing workloads. The technology described in the ’021 Patent was developed by Eui Nam Huh, Yunkon Kim, Jun Young Byun. By way of example, this technology is implemented core, regional, and edge clouds to reduce network load and improve the speed and efficiency of providing cloud services to client devices.

16. The ’894 Patent generally relates to methods for installing embedded firmware. The technology described in the ’894 Patent was developed by inventors Brian A. Batke, Jack M. Visoky, James J. Kay, Scott A. Mintz, and William B. Cook. By way of example, this technology is implemented methods that associate one or more digital certificate instances with one or more firmware file instances to update or facilitate the update of signature-unaware modules with signature-aware firmware.

17. Schneider has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that infringe the Patents-in-Suit.

## COUNT I
**(Infringement of the ’021 Patent)**

18. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

19. Long Horizon has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’021 Patent.

20. Defendants have and continue to directly infringe the ’021 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making,

using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’021 Patent. Such products include, but are not limited to, EcoStruxure Edge Apps; EcoStruxure Edge Apps Manager in cloud and on-premises configurations; supported EcoStruxure Edge Devices and Edge Runtime; Schneider Electric and third-party industrial Edge Apps; EcoStruxure Automation Expert and Soft dPAC edge-runtime configurations; and current Schneider industrial edge-to-cloud automation configurations combining centralized application management, local edge execution, and connected machine or plant devices., among other Schneider products.

21. For example, Defendants have and continue to directly infringe at least claim 10 of the ’021 Patent by making, using, offering to sell, selling, and/or importing into the United States, including the EcoStruxure Edge Apps Manager. The EcoStruxure Edge Apps Manager is exemplary of how the other Schneider products accused herein to infringe the ’021 Patent.

22. For example, the EcoStruxure Edge Apps Manager performs a method of detaching load in a cloud computing system comprising a cloud server configured to provide a cloud service and a client terminal configured to request or be provided with the service, the cloud server and the client terminal connected over a particular network (e.g., EcoStruxure Edge Apps Manager, connected Edge Devices, Edge Runtime, Edge Apps, and connected machine, industrial, and user devices).

23. The EcoStruxure Edge Apps Manager performs step no. 1 of arranging an edge cloud on a network node connected to the client terminal, the edge cloud formed with a particular cloud server (e.g., an EcoStruxure Edge Device and Edge Runtime deployed at a machine, production line, or plant to execute applications locally).

24. The EcoStruxure Edge Apps Manager performs step no. 2 of determining whether

or not identification is possible for a cloud service request signal transmitted from a publisher client terminal among the client terminals at the edge cloud (e.g., Edge Runtime/Manager onboarding, authentication, device-management, communications, and application-routing functionality identifying or authenticating a requesting device, application, or user).

25. The EcoStruxure Edge Apps Manager performs step no. 3-1 of providing a cloud service corresponding to the request signal to a subscriber client terminal wishing to receive the cloud service if the cloud service corresponding to the request signal is being operated at a cloud server of the edge cloud, if it is determined in said step no. 2 that identification is possible for the request signal (e.g., executing the requested EcoStruxure or third-party Edge App locally on the Edge Device to process machine/plant data and provide the corresponding local service).

26. The EcoStruxure Edge Apps Manager performs step no. 3-2 of transmitting the request signal to a core cloud connected to a cloud server and formed with a particular cloud server, if it is not determined in said step no. 2 that identification is possible for the request signal or if the cloud service corresponding to the request signal is not being operated at the cloud server of the edge cloud (e.g., communicating requests and/or associated data from the Edge Device to Edge Apps Manager, enterprise, or cloud infrastructure when processing or functionality is not provided locally).

27. The EcoStruxure Edge Apps Manager performs step no. 4-1 of, determining whether the edge cloud that has transmitted the request signal is connected to the subscriber client terminal (e.g., Edge Runtime and/or device-management functionality determining or maintaining the connection state of a connected client or industrial device), and transmitting a backward packet to the edge cloud that has transmitted the request signal based on the determining whether the edge cloud that has transmitted the request signal is connected to the subscriber client terminal (e.g.,

transmitting responsive data or service traffic through the Edge Device based on the connected client's communication/session state).

28. The EcoStruxure Edge Apps Manager performs step no. 4-2 of identifying the request signal and providing the cloud service corresponding thereto to the subscriber client terminal (e.g., centralized management or cloud infrastructure processing the forwarded request and providing corresponding services, applications, configurations, or responsive information through the edge environment).

29. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Schneider has used the Accused Products in a manner that directly infringes at least the method claims of the ’021 Patent.

30. Defendants have and continue to indirectly infringe one or more claims of the ’021 Patent by knowingly and intentionally inducing others, including Schneider customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

31. Defendants, with knowledge that these products, or the use thereof, infringe the ’021 Patent at least as of the date of this Complaint, have knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the ’021 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their employees and agents not to review the patents of other, including specifically those related to Defendants’ specific industry, thereby remaining willfully blind to the ’021 Patent at least as early as the issuance of the ’021 Patent.

32. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’021 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants’ website, product literature and packaging, and other publications, including the documents cited herein.

33. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the ’021 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants’ affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others’ use and manufacture of the Accused Products such that the ’021 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the ’021 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be specially made or adapted for use in the infringement of the ’021 Patent. Defendants perform these affirmative acts with knowledge of the ’021 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’021 Patent.

34. Long Horizon has suffered damages as a result of Defendants’ direct and indirect infringement of the ’021 Patent in an amount to be proven at trial.

35. Long Horizon has suffered, and will continue to suffer, irreparable harm as a result

of Defendants' infringement of the '021 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the '894 Patent)**

36. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

37. Long Horizon has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '894 Patent.

38. Defendants have and continue to directly infringe the '894 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '894 Patent. Such products include, but are not limited to, SpaceLogic MP and RP Series BACnet/IP controllers, including MP-C, MP-V, RP-C, and RP-V controllers and their EcoStruxure Building Commission/eCommission firmware-update configurations; current Modicon M580 and M580 Safety controllers and their EcoStruxure Automation Device Maintenance firmware-update configurations; and other current-generation Schneider Electric industrial and building controllers that support migration from legacy or unsigned firmware to cryptographically signed firmware, among other Schneider products.

39. For example, Defendants have and continue to directly infringe at least claim 1 of the '894 Patent by making, using, offering to sell, selling, and/or importing into the United States SpaceLogic MP and/or RP BACnet/IP controllers. The SpaceLogic MP and/or RP BACnet/IP controllers is exemplary of how the other Schneider products accused herein infringe the '894 Patent.

40. For example, the SpaceLogic MP and RP BACnet/IP controllers perform a method that receives, by a first device, signature unaware firmware code (e.g., a SpaceLogic MP or RP

controller receiving a pre-signed-generation unsigned controller firmware image through EcoStruxure Building Commission/eCommission); installing, by the first device via boot code, the signature unaware firmware code on the first device (e.g., SpaceLogic boot/update functionality receiving the unsigned firmware into controller firmware memory and activating the installed firmware during the controller's update/startup process), wherein the boot code is configured for installation of a signature aware firmware code and the signature unaware firmware code to the first device (e.g., SpaceLogic controller boot/update functionality supporting migration from earlier unsigned controller firmware to digitally signed controller firmware and subsequent signed-firmware operation), wherein the installing the signature unaware firmware code further comprises verifying, via at least one feedback mechanism (e.g., a SpaceLogic MP or RP controller receiving a pre-signed-generation unsigned controller firmware image through EcoStruxure Building Commission/eCommission), that the signature unaware firmware code is received from a second device associated with a user that has physical access to the first device (e.g., Commission/eCommission and controller connectivity functionality verifying or confirming a locally connected commissioning device/user through local IP, Bluetooth, directly attached Bluetooth-adapter, controller-identification, pairing, and/or related commissioning mechanisms before performing an update).

41. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Schneider has used the Accused Products in a manner that directly infringes at least the method claims of the ’894 Patent.

42. Defendants have and continue to indirectly infringe one or more claims of the ’894 Patent by knowingly and intentionally inducing others, including Fortinet customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using,

offering to sell, selling and/or importing into the United States products that include infringing technology.

43. Defendants, with knowledge[12] that these products, or the use thereof, infringe the ’894 Patent at least as of the date of this Complaint, have knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the ’894 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their employees and agents not to review the patents of other, including specifically those related to Defendants’ specific industry, thereby remaining willfully blind to the ’894 Patent at least as early as the issuance of the ’894 Patent.

44. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’894 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants’ website, product literature and packaging, and other publications, including the documents cited herein.

---

[12] Schneider cited to the ’894 Patent family in connection with several of its own patent applications in various territories, including U.S. Application No. US14/752,266, which was published as US 2016/0006722 A1 on January 7, 2016, and issue as U.S. Patent No. 9,699,172. *See* https://patents.google.com/patent/US8738894B2/en?oq=8738894#citedBy; *see also* https://patents.google.com/patent/US9699172B2/en. Indeed, the Schneider’s ’172 Patent specification discusses EP 2,402,879 A1 as prior art, which is a member of the ’021 Patent family. *See* https://patentimages.storage.googleapis.com/46/ce/fa/935d653ff1538a/US9699172.pdf at 1: 43-50. Accordingly, Schneider has pre-suit knowledge of the ’894 Patent.

45. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the ’894 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants’ affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others’ use and manufacture of the Accused Products such that the ’894 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the ’894 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be specially made or adapted for use in the infringement of the ’894 Patent. Defendants perform these affirmative acts with knowledge of the ’894 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’894 Patent.

46. Long Horizon has suffered damages as a result of Defendants’ direct and indirect infringement of the ’894 Patent in an amount to be proven at trial.

47. Long Horizon has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’894 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Long Horizon prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate Long Horizon for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Long Horizon its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

Dated: October 29, 2026

Respectfully submitted,

*/s/ John Andrew Rubino*

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
1200 Harbor Blvd., 10th Floor
Weehawken Township, NJ 07086
Telephone: (201) 341-9445
Facsimile: (973) 535-0921

Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Road, Suite 206 South
Rye, NY 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF,***
***LONG HORIZON TECHNOLOGIES LLC***